UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAYMIE J. ESCH,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____

Case No. 1:09-cv-144

Honorable Paul L. Maloney

**REPORT AND RECOMMENDATION**

        This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB). On February 9, 2006, plaintiff filed his application for DIB benefits, alleging a November 1, 2002 onset of disability. (A.R. 69-71). Plaintiff's claim was denied on initial review. (A.R. 52-56). On July 2, 2008, plaintiff received a hearing before an administrative law judge (ALJ) at which he was represented by counsel. (A.R. 23-51). On August 18, 2008, the ALJ issued a decision finding that the 36-year-old plaintiff was not disabled. (A.R. 12-20). On January 28, 2009, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

        On February 19, 2009, plaintiff filed his complaint seeking judicial review of the Commissioner's decision. Plaintiff argues that the Commissioner's decision should be overturned because the ALJ "improperly used administrative notice to determine that the claimant refused

treatment." (Plf. Brief at 4, docket # 6). Upon review, I find that plaintiff's argument is devoid of merit. I recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996)

("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from his alleged onset of disability of November 1, 2002, through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. (A.R. 14). The ALJ found that plaintiff had the severe impairment of a generalized anxiety disorder. (A.R. 14-16). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 16-17). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform work with only minimal contact or discussion with co-workers; minimal contact or directions from a supervisor; and work requiring only brief or superficial contact with the general public.

(A.R. 17). The ALJ found that plaintiff's testimony regarding his subjective functional limitations was not fully credible:
> The claimant is receiving medications from his primary care physician. He is not getting treatment from a psychologist, psychiatrist, or counselor. Nurse Markison indicated that the claimant needs treatment with psychiatry but did not have insurance to cover that (Exhibit 9F)[A.R. 213]. It is noted, however, that in the State of Michigan, low cost or sliding scale

medical and psychological treatment is available through [the] Community Mental Health Department and other participating physicians for individuals who qualify based on low income. Thus, it is not clear to the undersigned why the claimant has not availed himself of such services for regular medical treatment.

Furthermore, the claimant indicated that he was laid off from his last job and collected unemployment benefits. While the claimant did not actually engage in any work activity after his alleged onset date, he was paid unemployment benefits. Even though this is unearned income, he had to agree that he would work if a job were offered. He also indicated that he had submitted a resume to Monster.com and therefore appeared to be ready to work if a job was offered to him.

The claimant indicated as did nurse Markison in exhibit 12F[1] that he has difficulty with sustained concentration yet the claimant testified that he spends almost all day on the computer and reads and watches television at other times. It appears that he is able to sustain concentration on the computer for a large part of the day.

(A.R. 17-18). The ALJ found that plaintiff was unable to perform his past relevant work. (A.R. 18). Plaintiff was 30 years old as of his alleged onset of disability and 36 years old as of the date of the ALJ's decision. Thus, at all times relevant to his claim, plaintiff was classified as a younger individual. (A.R. 18). Plaintiff has a bachelor's degree in telecommunications from Michigan State University (A.R. 28) and is able to communicate in English. (A.R. 18). The transferability of jobs skills was not material to a disability determination. (A.R. 18). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 33,700 jobs in Michigan's lower peninsula that the hypothetical person would be

---

[1]The ALJ gave little weight to Nurse Markison's opinions. (A.R. 18). She is not an acceptable medical source. 20 C.F.R. § 404.1513(d). Her opinion that plaintiff is disabled is not entitled to any particular weight. The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

capable of performing. (A.R. 48-49). The ALJ found that this constituted a significant number of jobs and held that plaintiff was not disabled. (A.R. 12-20).

Plaintiff argues that the ALJ improperly used administrative notice to determine that the claimant refused treatment. (Plf. Brief at 4, docket # 6). Plaintiff's argument is patently meritless. The ALJ never found that plaintiff "refused treatment." The ALJ did find that plaintiff fell within the general rule that a claimant's failure to seek treatment over an extended time period undercuts the claimant's assertion that his impairment is disabling.

Plaintiff had the ultimate burden of proving disability and providing medical evidence in support of his claims. *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). It was his burden to present evidence proving the existence and severity of functional limitations caused by his impairments. *See Jones v. Commissioner*, 336 F.3d 469, 474 (6th Cir. 2003). Plaintiff presented very little medical evidence in support of his claim that he suffered from disabling "generalized anxiety disorder" from November 1, 2002, through August 18, 2008. He presented no evidence of any ongoing psychiatric treatment. He never required hospitalization. (A.R. 31-32). He testified that he was not being treated by a psychiatrist, counselor, or therapist. (A.R. 30-31). When the ALJ inquired why plaintiff was not receiving such treatment, plaintiff responded, "I've been unable to," without further elaboration. (A.R. 31).

The ALJ found that plaintiff's claims of anxiety-related functional limitations were not fully credible. Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See, e.g.*, *Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). An ALJ considers "all the available evidence" when evaluating the intensity and persistence of the claimant's symptoms. 20 C.F.R. § 404.1529(c)(1). The evidence

before the ALJ was that plaintiff was not receiving treatment from any psychiatrist, psychologist, or counselor during the years he claims to have been disabled. (A.R. 17). Thus, among the ALJ's list of reasons for finding that plaintiff's testimony was not fully credible was his lack of a documented need for ongoing treatment. The ALJ applied the well-established general rule that a claimant's failure to seek medical treatment over an extended period of time is a factor to be considered against the claimant's assertion of a disabling condition.[2] *See Strong v. Social Security Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment" and "[a] failure to do so may cast doubt on the claimant's assertions of disabling pain."); *see also Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing Credibility of an Individual's Statements*, SSR 96-7p (reprinted at 1996 WL 374186, at * 7) (SSA July 2, 1996) ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . ."). SSR 96-7p states that before drawing an adverse inference from the claimant's failure to seek or pursue regular medical treatment, an ALJ must first "consider[] any explanations the individual may provide or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." 1996 WL 374186, at * 7. The ALJ considered what little "explanation" plaintiff offered regarding his failure to seek or obtain treatment before drawing an adverse inference regarding plaintiff's credibility.

---

[2]The rule is not without exception. "In some circumstances, of course, a failure to seek examination or treatment may say little about a claimant's truthfulness." *Strong*, 88 F. App'x at 846 (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 2004)). In this case, there is no evidence that plaintiff's mental impairment was so severe that it prevented him from seeking examination or treatment.

Plaintiff did not testify that he was unable to afford treatment.³ He did not testify regarding any specific instance where he sought medical treatment and it was denied because he could not afford it or for any other reason. Plaintiff did testify that his daily activities were somewhat limited by financial constraints:

> Q   What time do you customarily go to bed, sir?
>
> A   Three a.m., or something.
>
> Q   What time do you get out of bed [in] the morning for good?
>
> A   In between 10:30 [a.m.] and 2:00 p.m.
>
> Q   After you get up what do you do between then and dinnertime?
>
> A.   Depending upon the day. If I stay at home I will get some coffee, decaffeinated coffee. And I tend to get on my computer and either play a game or poke around the Internet or something of the sort. If I leave occasionally I go -- I'll borrow my mother's car and I may go to the bookstore and walk through the bookstore briefly. I don't stay for very long but I do look at the books. I also, my father occasionally sends me $20 every so often, every month or so, and I will go to my local Starbucks and get a cup of coffee there and either sit at the table and drink it briefly before leaving or I will go home with it. But upon returning home I normally get on the computer. That's the majority of what I do.
>
> Q   And you're on the computer until you go to bed?
>
> A   Yes, other than maybe some television watching.

(A.R. 33). Plaintiff supplied similar responses to his attorney's questions:

> Q   Are there any issues with your driving?

---

³The Sixth Circuit has held that general assertions regarding a plaintiff's inability to pay for additional tests or services that might have supported his claim are insufficient. *Gooch*, 833 F.2d at 592. The Sixth Circuit recognizes that an inability to pay for medical services may result in less than optimum documentation of a plaintiff's condition, but the reviewing court must work with the medical record presented to it. "It is doubtless true that a more affluent patient might have obtained a more detailed medical record, but it does not necessarily follow that such a record would have compelled a conclusion that the claimant was disabled. We must work with the record we have . . . ." *Id.*

> A   No, I am capable of driving, in fact, I'm a good driver. I don't currently have a car so the only ability I have to drive is to borrow my mom's car when she's not using it. But I really don't go anywhere other than, as I said, perhaps to the bookstore and/or Starbucks. However, Starbucks is within walking distance.
>
> * * *
>
> Q   You said that you rarely go to the store but you occasionally go. Why do you rarely go?
>
> A   Well, first of all, I have no money so, to be honest, is one reason it's kind of pointless. But I just, I mean I do need to get out occasionally, you know, I can't always stay inside. And on, on days where I feel good I will go over and, you know, browse, like I said, I like to go to the bookstore so I browse and see what's out or something like that.

(A.R. 35-37). The fact that plaintiff could only browse in a local bookstore (A.R. 36-37) did not establish that he was unable to pay for psychological treatment or counseling or that such care was not available from community mental health or otherwise. His hours online using his computer and premium coffee habits do not suggest that he lacked the funds to pay for mental health care.

Pam Markison, a nurse practitioner, supplied a note stating that plaintiff's health plan did not cover psychiatry and that he had "tried multiple resources in the community for mental health and he [did] not qualify for any of those." (A.R. 213). This vague statement that plaintiff had, on some unspecified occasion or occasion, "tried multiple resources in the community for mental health" and purportedly did not qualify "for any of those" (A.R. 213) was not entitled to any particular weight. It provided the ALJ with no explanation when or where plaintiff had sought mental health care and did not describe any of the reasons why these purported requests were denied. Administrative Law Judges evaluate hundreds of disability claims, and through the process of reviewing medical records and conducting administrative hearings, they develop a high level of

familiarity with the psychological treatment options available within the community[4]. Here, the ALJ determined that plaintiff did not present persuasive evidence explaining why he had not availed himself of the mental health treatment available to him at little or no cost. (A.R. 18). I find no error.

Assuming *arguendo* that plaintiff is correct that the ALJ erred in taking "judicial notice" that mental health care was available to plaintiff at little or no cost, it is obvious that in this instance, any error was harmless. Plaintiff's daily activities severely undercut his claims of a disabling anxiety. He testified that his hobbies were computer gaming and writing. (A.R. 32). During a March 3, 2006 consultative examination, plaintiff related that he was independent in his activities of daily living. He could drive a car and was able to perform activities such as shopping, housekeeping, gardening, and yard work. He stated that his daily routine included using his computer until approximately 2:00 a.m., watching television until 4:00 a.m., and then sleeping until noon. (A.R. 193). It was entirely appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). The ALJ's credibility determination is supported by more than substantial evidence.

---

[4] Plaintiff makes a generalized argument that cutbacks in mental health care in Michigan have "severely impaired the ability of indigent individuals to obtain treatment." (Plf. Brief at 4). Plaintiff's argument is not supported by a single specific example where he requested and was denied mental health care during the period at issue: November 1, 2002 through August 18, 2008.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated: January 13, 2010            /s/ Joseph G. Scoville
                                   United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).